**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **RICHARD BLACKMAN** | * | **CIVIL ACTION NO. 25-2220** |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| **MAMCO HARVEY, LLC D/B/A HONDA OF HARVEY, ET AL.** | * | **MAGISTRATE JUDGE EVA J. DOSSIER** |

* * * * * * * *

**ORDER & REASONS**

Before the Court is a Motion to Review Magistrate Judge's Decision filed by Plaintiff Richard Blackman ("Blackman"). R. Doc. 66. American Honda Finance Corporation ("AHFC") and Honda Lease Trust ("HLT") (collectively, "Honda Defendants") oppose the Motion. R. Doc. 70. Blackman and Honda Defendants filed supplemental memoranda. R. Docs. 75, 76. After considering the record, briefing, and applicable law, the Court rules as follows:

## I. BACKGROUND

Blackman filed this action asserting state law claims for fraud, absolute and relative nullity of contract, unfair trade practices, intentional/negligent infliction of emotional distress, and a violation of the Fair Credit Reporting Act. R. Doc. 1-2 at 4–9. Blackman represents that, on July 18, 2024, he signed an automobile lease with Defendant Mamco Harvey, LLC ("Mamco") as a co-lessor with his daughter. *Id.* at 2. Blackman claims that, after he left the dealership thinking the deal was complete, an agent of Mamco forged his signature on a different lease than the one he originally signed, which now lists him as the primary lessee, and on an application for automobile insurance. *Id.* at 2. Blackman alleges that Mamco later transferred the forged lease to its affiliates, Honda Defendants. *Id*. Blackman avers that Honda Defendants failed to reasonably investigate the alleged fraud despite receiving notice from Blackman that his signature was forged. *Id.* at 3, R. Doc. 66 at 3. Honda Defendants instead relied on the forged documents to force Blackman to make payments under the terms of the lease, and furnished information that he defaulted on payments under the disputed lease to Equifax, TransUnion, and Experian, thereby harming Blackman's

credit score. R. Doc. 1-2 at 3. Blackman seeks damages, a declaratory judgment stating that the lease was forged, and injunctive relief to ensure that Defendants no longer represent the forged lease as an enforceable contract. *Id.* at 9.

The parties are currently in the discovery phase of litigation. As part of discovery, Blackman has sought to obtain the "raw" or "native" data underlying the subject lease agreement to assist in determining whether the lease was altered after he left the Mamco dealership. *See* R. Doc. 66 at 8. Blackman submitted requests for production asking Honda Defendants to produce this raw data. R. Doc. 33-6 at 4. Honda Defendants replied that the requested materials were in the possession of third-party vendors, FIS and Dealertrack, who supplied the software platforms on which the subject lease agreement and insurance application were signed, stored and/or transferred to Honda Defendants. R. Docs. 48-1 at 3–4, 33-8 at 4. Honda Defendants further attested in their discovery responses that they "d[id] not have the legal right to obtain [the raw or native data] from [FIS and Dealertrack] on demand." R. Docs. 33-6 at 3–4, 8, 33-1 at 5.

Blackman thereafter subpoenaed Dealertrack and FIS for this raw data, among other materials. *See* R. Docs. 48-2, 48-3. Blackman also requested Dealertrack and FIS provide copies of any contract provisions between themselves and Honda Defendants showing Honda Defendants' right to request the raw or native data on demand (hereafter, "Master Service Agreements"). *See* R. Doc. 48-2 at 2–7.

FIS responded with written objections, wherein FIS maintained that the subpoena sought privileged and confidential information, and was "unduly burdensome because it request[ed] information that could be easily obtained from . . . [AHFC]." R. Doc. 51-6 at 2. FIS did not specify which requested materials could be obtained from Honda Defendants. *See id.*

Honda Defendants thereafter filed a motion for a protective order asking the court to forbid the disclosure of the Master Service Agreements on the ground that these documents constitute Honda Defendants' proprietary information, confidential business records, and/or trade secrets. R. Doc. 48-1 at 4. Blackman filed a response to Honda Defendants' motion arguing that the Master Service Agreements were relevant to the dispute because whether Honda Defendants had the right to access the raw or native data

has a direct bearing on whether they conducted a reasonable investigation on the disputed lease. R. Doc. 51 at 8. Blackman further argued that FIS's statement that Honda Defendants "could easily obtain" the materials requested in Blackman's subpoena called into question Honda Defendants' claim that it could not access the raw data. *Id.* at 4. In Blackman's view, disclosure of the Master Service Agreements was necessary to confirm whether Honda Defendants were accurately representing their right to access this data. *Id.* at 4–5.

In reply, Honda Defendants attached the affidavit of Ricky Patterson, Dealer Relations Manager for AHFC. R. Doc. 52-1 at 1. Therein, Patterson attests that the Master Service Agreements contain proprietary information that AHFC regards as strictly confidential, and that disclosure of the Agreements would cause "immediate and irreparable commercial and competitive injury to AHFC." *Id.* at 2–3. Honda Defendants reminded the court that they had already responded to Blackman's discovery requests by stating they did not have access to the native or raw data, and have maintained this position throughout the duration of litigation. R. Doc. 52 at 5.

The magistrate judge heard oral argument on the motion before granting Honda Defendants' request for a protective order on the Master Service Agreements. R. Doc. 62. The magistrate judge explained her reasoning from the bench:

> As to the Master Service Agreements, I find that they're not discoverable under Rule 26. The position that the MSA's could undermine or call into question whether American Honda Finance was truthful in its prior statements essentially amounts to discovery about discovery. Now, if AHFC was not truthful in its prior statements about the possession or custody of data, that would be a significant problem for AHFC, but I'm not going to endorse a fishing expedition to probe the veracity of AHFC's statements on this record.

R. Doc. 73 at 19–20.

## II. PRESENT MOTION

Blackman moves for review of the magistrate judge's decision on the Master Service Agreements. Blackman maintains the decision was in clear error because the Master Service Agreements are relevant and discoverable under Fed. R. Civ. P. 26. R. Doc. 66 at 3. In Blackman's view, whether Honda Defendants

had access to the raw data bears directly on the adequacy of their investigation. *Id.* at 3–4. Blackman continues by emphasizing that his subpoenas sought only portions of the contracts between Dealertrack/FIS and Honda Defendants that relate to data access rights, not the contracts as a whole, mitigating Honda Defendants' confidentiality concerns. *Id.* at 4. Blackman presses that, to the extent the sought-after provisions constitute proprietary information, the magistrate judge erred in declining to implement a middle ground solution, such as an in-camera review or an attorneys'-and-experts'-eyes-only restriction. *Id.* at 3.

In opposition, Honda Defendants maintain the magistrate judge did not err in her decision because the risk of injury to Honda Defendants by disclosure of the Master Service Agreements significantly outweighs Blackman's need for the documents. R. Doc. 70 at 13. Honda Defendants emphasize that they have already told Blackman they lack the contractual right to access the raw or native data, so the Master Service Agreements serve no effective purpose, and instead, simply risk the disclosure of Honda's confidential information. *Id.* at 2, 11.

## III. LEGAL STANDARD

A magistrate judge may issue orders regarding non-dispositive pretrial matters. Fed. R. Civ. P. 72(a). Under Rule 72(a), a magistrate judge's ruling on a non-dispositive matter is subject to reversal only where the decision is "clearly erroneous or contrary to law." A ruling is "clearly erroneous" only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 565 (1985). As such, the party seeking reversal "bears a heavy burden." *Seacor Marine, L.L.C. v. Cummins Mid-S., Inc.*, No. 09-383, 2010 WL 2292152, at *2 (E.D. La. June 3, 2010).

## IV. DISCUSSION

Subpoenas issued for discovery purposes are subject to the discovery limitations detailed in Fed. R. Civ. P. 26(b). Rule 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Relevant information, however, may not be discoverable where "the discovery sought is unreasonably cumulative or duplicative." Fed. R.

Civ. P. 26(b)(2)(C).

Rule 26(c) allows the court, "for good cause, [to] issue an order" restricting discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In determining whether to grant a protective order, a court is tasked with balancing "the hardship to the person from whom discovery is sought against the information's probative value to the requesting party." *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016). The party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

The magistrate judge determined that the Master Service Agreements were not discoverable under Rule 26. Reviewing the record, briefing, and applicable law, the Court is not left with a firm and definite conviction that the magistrate judge erred.

First, Honda Defendants, as the movants, presented evidence indicating that the Master Service Agreements constituted confidential business information. Patterson's affidavit explained that the software systems provided by Dealertrack and FIS were specifically designed for Honda Defendants to serve their specific needs, and the Master Service Agreements contained confidential information discussing these "customized configurations." R. Doc. 52-1 at 2-3. Patterson continued that disclosure of the Agreements would "risk significant and irreparable damage to [Honda Defendants]." *Id.* at 3.

Second, although Honda Defendants' ability to access the system data is relevant to Blackman's reasonable investigation claim, Honda Defendants had already stated repeatedly in discovery responses and in briefing that they do not have the contractual right to access such data on demand. R. Docs. 45 at 5, 57 at 6, 33-6 at 3–4, 8, 33-1 at 5, 33-7 at 9–10. The Master Service Agreement provisions sought were essentially duplicative of information already obtained.

Finally, FIS's statement that the subpoenaed information could be obtained from Honda Defendants did not specify whether it was referring to the raw data, Master Service Agreements, or other materials

requested in the subpoena. R. Doc. 51-6 at 2. It was not a clear statement that Honda Defendants had access to the raw or native data. The magistrate judge therefore did not clearly err in refusing "to endorse a fishing expedition to probe the veracity at AHFC's [representations]" on the basis of this vague, inconclusive statement.

The record presented to the magistrate judge indicated that the probative value of the Master Service Agreements was negligible because Blackman had already learned through discovery that Honda Defendants did not have access to the raw data. The risk of harm, on the other hand, was genuine given Honda Defendants' confidentiality concerns. In balancing these interests, the magistrate judge elected not to implement a middle ground solution, such as an in-camera review, and instead to prevent the disclosure of the Master Service Agreements in any form. Given the balance of interests clearly weighed in favor of protecting Honda Defendants' confidentiality concerns, the Court cannot conclude that the magistrate judge clearly erred in her decision.

## V. CONCLUSION

Considering the foregoing;

**IT IS ORDERED** that Plaintiff's Motion for Review of Magistrate Judge's Decision, R. Doc. 66, is hereby **DENIED.**

New Orleans, Louisiana, this 3rd day of November, 2026.

THE HONORABLE ELDON E. FALLON